**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALAA DIB, | |
| Plaintiff, | |
| v. | Civil Action No. 25-4167 (JEB) |
| PETER T. SHEA & MARCO A. RUBIO, | |
| Defendants. | |

**MEMORANDUM OPINION**

Plaintiff Alaa Dib needs a K-1 nonimmigrant visa to come to the United States to marry his American fiancée. His application, however, has languished in administrative processing in Jordan for almost two years. Dib has thus turned to the courts. He seeks relief under the Administrative Procedure Act for agency action that has been unreasonably delayed, as well as a writ of mandamus, both of which would compel Defendants to finish processing his application. Defendants have now moved to dismiss. The Court holds that Plaintiff's suit is not barred by consular nonreviewability. It also holds, however, that Dib has not stated a claim that the delay he has suffered — while undoubtedly frustrating — has grown so unreasonable that it warrants judicial relief. It therefore grants the Motion to Dismiss.

## I.    Background

### A.    Legal Background

Sixty to eighty million foreigners visit the United States every year. See Adam G. Levin & Jill H. Wilson, Cong. Rsch. Serv., IN12589, Recent Developments in International Tourism to the United States (2026). Even more presumably want to. Whether they can often comes down to whether they receive a visa.

1

Anyone wanting a nonimmigrant visa to enter the United States must first pay a fee and submit an application.  See U.S. Dep't of State, 9 Foreign Affairs Manual § 403.2-3(a) (2026). He must then make the trip to an overseas U.S. consulate for an in-person interview.  Id., § 403.5-2.  The applicant bears the burden of proving that he is eligible for the visa he seeks.  See 8 U.S.C. § 1361.  Unless his country is subject to visa sanctions, "[w]hen a visa application has been properly completed and executed . . . , the consular officer must" either "issue the visa" or "refuse" it.  See 22 C.F.R. § 41.121(a); see also 9 Foreign Affairs Manual § 403.7-3.

Section 221(g) of the Immigration and Nationality Act directs consular officers to deny a visa if "it appears to the consular officer, from statements in the application, or in the papers submitted therewith, that [an] alien is ineligible to receive" one.  See 8 U.S.C. § 1201(g).  The process, however, does not necessarily end when an application is first refused.  That is because while the initial application and interview might not convince the consular officer that the applicant is eligible for a visa, further evidence might.  If the consular officer finds that the applicant has fallen short of his burden but that further information might nudge him over the line, then she can put the visa into so-called administrative processing — during which the officer seeks out and reviews more evidence.  The applicant, meanwhile, must cool his heels.

Neither Congress nor any regulations say how long administrative processing may take. Still, because the State Department is subject to the APA, its officers cannot dawdle forever; they must "conclude a matter presented to" them "within a reasonable time."  5 U.S.C. § 555(b).  This case alleges that such administrative processing has dragged on for so long that it violates that duty.

2

B.    <u>Factual Background</u>

Alaa Dib is a Syrian citizen currently living in Jordan.  <u>See</u> ECF No. 1 (Compl.), ¶ 10. He is engaged to U.S. citizen Manar Haitham Yared and wants to come to the United States so that the couple can wed.  <u>Id.</u>, ¶ 18.  When a foreign national wishes to enter the country to marry an American fiancée, two steps are needed.  First, the American partner must file a Form I-129F petition.  <u>Nonimmigrant Visa for a Fianc(é)e (K-1)</u>, U.S. Dep't of State, https://perma.cc/VA3R-9A5R.  Once that is approved, her foreign fiancé needs to secure a K-1 nonimmigrant visa.  <u>Id.</u> The visa lets him enter the United States, where he must marry her within 90 days.  <u>Id.</u>

For Dib and Yared, step one went smoothly.  Yared filed an I-129F Petition in September 2022, which was approved one year later.  <u>See</u> Compl., ¶¶ 16–17.  The second step, however, hit a snag.  Dib applied for his K-1 visa and was interviewed at the U.S. consulate in Jordan in July 2024.  <u>Id.</u>, ¶ 21.  But his application was refused under Section 221(g) and placed in administrative processing.  <u>Id.</u>, ¶ 22; ECF No. 1-7 (Visa Commc'ns) at ECF p. 4.  Dib was asked to submit more information that might show his eligibility, which he did on July 30, 2024.  <u>See</u> Compl., ¶ 22.  Since then, he has gotten no update.  Yared has repeatedly asked the U.S. Embassy in Jordan for news and has repeatedly been told that the embassy does not know how long administrative processing will take and that it will contact her when there is an update.  <u>See</u> Visa Commc'ns at ECF pp. 3–22.

Dib thus filed a lawsuit asking this Court to order Defendants to "process [Plaintiff's] visa application as soon as reasonably possible."  Compl., ¶ 42.  He seeks an injunction under § 706(1) of the APA, which creates a cause of action to "compel agency action unlawfully withheld or unreasonably delayed," 5 U.S.C. § 706(1), as well as a writ of mandamus under the

3

Mandamus Act, 28 U.S.C. § 1361.  See Compl., ¶¶ 30–41.  Defendants have moved to dismiss. See ECF No. 6 (MTD).

## II.    Legal Standard

Defendants' Motion invokes the legal standards for dismissal under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).  When a defendant brings a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction, "[t]he plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence."  Bagherian v. Pompeo, 2020 WL 674778, at *2 (D.D.C. Feb. 11, 2020) (quoting Didban v. Pompeo, 435 F. Supp. 3d 168, 174 (D.D.C. 2020)). The court "assume[s] the truth of all material factual allegations in the complaint and 'construe[s] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'"  Am. Nat'l Ins. Co. v. FDIC, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (quoting Thomas v. Principi, 394 F.3d 970, 972 (D.C. Cir. 2005)).

To survive a motion to dismiss under Rule 12(b)(6), a complaint must "state a claim upon which relief can be granted."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 552 (2007).  Although "detailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion, id. at 555, "a complaint must contain sufficient factual matter, [if] accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  Although a plaintiff may survive a Rule 12(b)(6) motion even if "'recovery is very remote and unlikely,'" the facts alleged in the complaint "must be enough to raise a right to relief above the speculative level."  Twombly, 550 U.S. at 555–56 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

**III.    Analysis**

The Court first considers whether it may hear Dib's suit.  Finding that the answer is yes, it then assesses the merits — starting with Dib's claim under the APA, then turning to his petition for a writ of mandamus.

A.    Consular Nonreviewability

Defendants argue that the Court should not even reach Dib's causes of action, because they are barred by the doctrine of consular nonreviewability.  See MTD at 11–15.  That doctrine generally prevents courts from reviewing the Executive Branch's decision to grant or deny an alien's visa application.  While the doctrine contains two narrow exceptions — one if "a statute expressly authorizes judicial review," another if refusing entry to the alien burdens a U.S. citizen's constitutional rights, Baan Rao Thai Rest. v. Pompeo, 985 F.3d 1020, 1024–25 (D.C. Cir. 2021) (cleaned up) — Plaintiff does not argue that either exception is met here.  See ECF No. 8 (Opp.) at 26–29.  With the exceptions off the table, the question is whether consular nonreviewability applies in the first place.

It does not.  The doctrine shields decisions to grant or deny a visa.  Saavedra Bruno v. Albright, 197 F.3d 1153, 1159 (D.C. Cir. 1999) ("The doctrine holds that a consular official's decision to issue or withhold a visa is not subject to judicial review . . . .") (emphasis added); Baan Rao, 985 F.3d at 1024 ("Consular nonreviewability shields a consular official's decision to issue or withhold a visa from judicial review . . . .") (emphasis added); Trump v. Hawaii, 585 U.S. 667, 702 (2018) ("[T]he admission and exclusion of foreign nationals is a 'fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.'") (emphasis added) (quoting Fiallo v. Bell, 430 U.S. 787, 792 (1977)); Dep't of State v. Muñoz, 602 U.S. 899, 908 (2024) (Consular nonreviewability protects "the action of an

executive officer to admit or to exclude an alien," so "federal courts cannot review" "a consular officer's denial of a visa.") (emphasis added) (quotation marks omitted); United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537, 543 (1950) ("[I]t is not within the province of any court, unless expressly authorized by law, to review the determination of the political branch of the Government to exclude a given alien.") (emphasis added).

Dib, however, is not challenging the result of a visa decision, but only its timing. He simply wants the Executive Branch to finish its administrative processing and make a decision either way. As the Supreme Court has explained, "[W]hen an agency is compelled by law to act within a certain time period," but the action itself "is left to the agency's discretion, a court can compel the agency to act," even though it "has no power to specify what the action must be." Norton v. S. Utah Wilderness All., 542 U.S. 55, 65 (2004). That is the case here, and so consular nonreviewability does not block Plaintiff's path.

Despite all that, Defendants insist that a recent unpublished decision by the D.C. Circuit, Karimova v. Abate, 2024 WL 3517852 (D.C. Cir. July 24, 2024), alters the landscape. Before Karimova, "a long line of decisions from" courts in this district had "held that the consular nonreviewability doctrine applies only to final decisions," that placing a visa application in administrative processing is not a final decision, and that consular nonreviewability therefore does not bar challenges to long delays in such processing. Al-Gharawy v. U.S. Dep't of Homeland Sec., 617 F. Supp. 3d 1, 11 (D.D.C. 2022); see also Thein v. Trump, 2025 WL 2418402, at *7 (D.D.C. Aug. 21, 2025) (collecting cases holding that administrative processing is not final decision). Karimova, however, held that a decision to place a visa into administrative processing is a final decision: the visa has been denied. See 2024 WL 3517852, at *4.

6

Defendants therefore reason that Dib is challenging a final decision, and so consular nonreviewability drops into place.

The Court disagrees.  For starters, <u>Karimova</u> is unpublished and thus not binding.  <u>See</u> D.C. Cir. R. 36(e)(2) ("[A] panel's decision to issue an unpublished disposition means that the panel sees no precedential value in that disposition."); <u>In re Grant</u>, 635 F.3d 1227, 1232 (D.C. Cir. 2011).  It is also beside the point: even if placing a visa application in administrative processing were a final decision, Plaintiff is not challenging <u>that</u> decision.  He does not argue that the Government should have granted his application or should not have put it in administrative processing.  He asserts only that, now that officials have opted for further processing, they must conclude it within a reasonable time.  Once again, that is not a challenge to any decision to grant or deny his visa.  <u>See</u> <u>Diabin v. Rubio</u>, 2025 WL 1824841, at *3 (D.D.C. July 2, 2025); <u>Didban</u>, 435 F. Supp. 3d at 174; <u>Motevali v. Rubio</u>, 2025 WL 885116, at *5 (D.D.C. Mar. 21, 2025).  The Court may therefore proceed to the merits.

B.      <u>APA Claim</u>

The Court looks first at Dib's claim under § 706(1) of the APA to "compel agency action" — here, finishing administrative processing — that has been "unreasonably delayed."  5 U.S.C. § 706(1).  "To state a claim for unreasonable delay, [p]laintiffs must" plausibly allege two elements: (1) "that the agency 'failed to take a discrete agency action that it is required to take,'" and (2) "that the delay was unreasonable."  <u>Da Costa v. Immigr. Inv. Program Off.</u>, 80 F.4th 330, 340 (D.C. Cir. 2023) (quoting <u>S. Utah Wilderness All.</u>, 542 U.S. at 64).  This section tackles those elements in turn.

1.    *Discrete and Required Action*

Start with whether Dib alleges a discrete action that Defendants are required to take.  He plainly checks the first box: he simply wants a timely up-or-down decision on a single visa application.  Khazaei v. Blinken, 2023 WL 6065095, at *6 (D.D.C. Sept. 18, 2023).

Until recently, there would have been little doubt that this was also an action that Defendants are required to take.  Section 555(b) of the APA mandates that an agency "conclude a matter presented to it" "within a reasonable time."  5 U.S.C. § 555(b).  And the Circuit has held that this provision imposes a binding obligation with which the agency must comply.  In re Am. Rivers, 372 F.3d 413, 418, 420 (D.C. Cir. 2004); Mashpee Wampanoag Tribal Council, Inc. v. Norton, 336 F.3d 1094, 1099 (D.C. Cir. 2003).

The Circuit's recent decision in Karimova, however, held that § 555(b) does not impose a clear duty.  See 2024 WL 3517852, at *3–6.  As discussed above, Karimova is not binding.  And courts in this district have split over whether to follow its reasoning.  Compare, e.g., Khodabakhshian v. Rubio, 2025 WL 3135640, at *3 (D.D.C. Nov. 10, 2025), with, e.g., Hemmat v. Blinken, 2024 WL 4210658, at *4 (D.D.C. Sept. 17, 2024).

Which side of the debate is right is a complicated question that would needlessly sidetrack both Court and reader, as the answer makes no difference here.  If Karimova is correct, then Defendants are not withholding required action, so Plaintiff's § 706(1) claim trips at the starting line.  If not, then the Court would proceed to whether the delay is so unreasonable that it warrants judicial relief — which, as discussed below, it is not.  Because the outcome is the same either way, the Court will skip the detour into Karimova and continue on its path to § 706(1)'s second prong.

2.      *Unreasonable Delay*

Courts examine the reasonableness of a particular delay using the six factors from

Telecommunications Research & Action Center v. FCC (TRAC), 750 F.2d 70, 80 (D.C. Cir.

1984):

> (1) the time agencies take to make decisions must be governed by a
> rule of reason; (2) where Congress has provided a timetable or other
> indication of the speed with which it expects the agency to proceed
> in the enabling statute, that statutory scheme may supply content for
> this rule of reason; (3) delays that might be reasonable in the sphere
> of economic regulation are less tolerable when human health and
> welfare are at stake; (4) the court should consider the effect of
> expediting delayed action on agency activities of a higher or
> competing priority; (5) the court should also take into account the
> nature and extent of the interests prejudiced by delay; and (6) the
> court need not find any impropriety lurking behind agency lassitude
> in order to hold that agency action is unreasonably delayed.

Id. at 80 (cleaned up).

Plaintiff first argues that because the TRAC factors depend on the specific facts of the

agency's delay, the Court should hold off on assessing them until after discovery. See Opp. at

29–30.  The D.C. Circuit, however, has applied the TRAC factors at the motion-to-dismiss stage

and affirmed district courts that did the same.  Da Costa, 80 F.4th at 340–46.  Circuit law thus

implies that the Court should assess whether Plaintiff has plausibly alleged that the factors tip in

his favor.

a.      Factors (1) and (2)

Start with whether Defendants' timeline has been governed by a rule of reason and

whether Congress has provided any guidance.  The questions are related: if Congress has dictated

how long a decision should take and the agency blows through that deadline, then that fact alone

suggests unreasonableness.  See Afghan & Iraqi Allies v. Blinken, 103 F.4th 807, 816–17 (D.C.

9

Cir. 2024). Courts therefore "typically consider the first and second factors together." Nusrat v. Blinken, 2022 WL 4103860, at *6 (D.D.C. Sept. 8, 2022).

These factors ask how long the agency has delayed and why. Afghan & Iraqi Allies, 103 F.4th at 816. While the amount of time is thus relevant, it is not dispositive. Other considerations include "the complexity of the task at hand, the significance (and permanence) of the outcome, and the resources available to the agency," Mashpee Wampanoag Tribal Council, 336 F.3d at 1102 — essentially, whether there is "any rhyme or reason" for the agency's delay. Ctr. for Sci. in the Pub. Int. v. U.S. FDA, 74 F. Supp. 3d 295, 300 (D.D.C. 2014). Dib, however, has not alleged any facts about the reasons for the agency's delay or its capacity to move faster. Instead, the only relevant allegations in his Complaint are about how long he has waited. See Compl., ¶¶ 3–5, 22–29, 33. While the length of the delay is thus not the only factor that is legally relevant, it is the one on which Dib's claim must stand or fall. The Court will therefore ask whether that time is reasonable.

The Court first asks whether the delay has run past any congressionally prescribed timeline. It has not because Congress has declined to set a deadline to process nonimmigrant visas. Dib argues otherwise, pointing to a statute that declares, "It is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). The nonimmigrant visa for which Plaintiff applied, however, is not an "immigration benefit application." The statute defines the phrase so generally as to be unhelpful. Id., § 1572(2) ("The term 'immigration benefit application' means any application or petition to confer, certify, change, adjust, or extend any status granted under the Immigration and Nationality Act . . . ."). Surrounding context, however, clarifies the phrase. The relevant statute explains that it is meant to "provide the Immigration

10

and Naturalization Service with the mechanisms it needs to eliminate the current backlog in the processing of immigration benefit applications." Id., § 1571(a)(1).  An "immigrant benefit application" must therefore be the kind of application processed by the INS.  That agency, however, did not process nonimmigrant visas like the one at issue here, which have been issued by consular officers within the State Department since the INA was enacted.  Id., § 1201(a)(1)(B); see also id., § 1104(a) (consular officers are supervised by Secretary of State).  The 180-day timeline therefore does not cover Dib's application.  Lee v. Blinken, 2024 WL 639635, at *6 (D.D.C. Feb. 15, 2024).

"Absent a congressionally supplied yardstick, courts typically turn to case law as a guide" for how much time is reasonable.  Sarlak v. Pompeo, 2020 WL 3082018, at *6 (D.D.C. June 10, 2020).  That "caselaw typically considers the two-year mark to be the lowest threshold for a finding of unreasonable delay in visa processing cases."  Murway v. Blinken, 2022 WL 493082, at *2 (D.D.C. Feb. 16, 2022) (quotation marks omitted); see also Didban, 435 F. Supp. 3d at 176–77 (D.D.C. 2020) (with delay of two years, first two factors "strongly favor the Government"); Sarlak, 2020 WL 3082018, at *5 (same); Skalka v. Kelly, 246 F. Supp. 3d 147, 154 (D.D.C. 2017) (two-year delay "does not typically require judicial intervention").  Delays longer than two years have also been consistently found reasonable.  Bagherian v. Pompeo, 442 F. Supp. 3d 87, 95 (D.D.C. 2020) (25 months); Mahmood v. U.S. Dep't of Homeland Sec., 2021 WL 5998385, at *7–8 (D.D.C. Dec. 20, 2021) (same); Janay v. Blinken, 743 F. Supp. 3d 96, 115 (D.D.C. 2024) (26-month delay "well within" reasonable timeline) (quotation marks omitted); Dastagir v. Blinken, 557 F. Supp. 3d 160, 165 (D.D.C. 2021) (29-month delay reasonable); Akrayi v. U.S. Dep't of State, 2023 WL 2424600, at *3 (D.D.C. Mar. 9, 2023) (delay of "almost

11

three years . . . falls comfortably within the range of reasonableness"); <u>Isse v. Whitman</u>, 2023 WL 4174357 (D.D.C. June 26, 2023) (40-month delay reasonable).

Plaintiff's wait does not approach those benchmarks. He says that he was told that his application had been put in administrative processing sometime after his interview at the U.S. Embassy in Jordan on July 23, 2024. <u>See</u> Compl., ¶¶ 21–22. Courts in this district divide over whether agency delays should be measured up to the date when the plaintiff sued or up to the date when the court issues its opinion. <u>Compare, e.g.</u>, <u>Barazandeh v. U.S. Dep't of State</u>, 2024 WL 341166, at *7 n.7 (D.D.C. Jan. 30, 2024) ("The proper method for calculating delay . . . is the length of time between the last action the government took on a visa application and the filing of plaintiff's complaint."), <u>with, e.g.</u>, <u>Brzezinski v. U.S. Dep't of Homeland Sec.</u>, 2021 WL 4191958, at *4 n.3 (D.D.C. Sept. 15, 2021) ("[C]ases seem to focus on the delay up to the issuance of the opinion."). Even measuring time up until today, Plaintiff has been stuck in administrative processing for less than 23 months — well within the time that courts hold is reasonable as a matter of law.

The Court is mindful of how hard it is for a plaintiff to allege facts beyond the length of the delay before he has gotten discovery. How is he supposed to know how a consulate prioritizes applications, whether that system is rational, and whether officers are working diligently to clear the backlog? Yet many plaintiffs can overcome that hurdle, since some delays are so long that their duration — by itself — is enough for the first two factors to tip the plaintiff's way. <u>Asadi v. U.S. Dep't of State</u>, 2024 WL 3835409, at *7 (D.D.C. Aug. 15, 2024) ("District courts have generally found that immigration delays in excess of five, six, seven years are unreasonable.") (quotation marks omitted). Dib's problem, however, is that he falls well short of that line. The first two factors thus favor Defendants.

> b.      Factors (3) and (5)

Factors (3) and (5) — whether human health and welfare are at stake and the interests prejudiced by delay — overlap, so courts typically consider them together.  Liberty Fund, Inc. v. Chao, 394 F. Supp. 2d 105, 118 (D.D.C. 2005); Sivananthan v. Blinken, 2023 WL 4885858, at *3 (D.D.C. Aug. 1, 2023).  They plainly favor plaintiffs whose health suffers because of the agency's delay, which Dib alleges here.  He is from Syria, where he will not return because he fears that he will be persecuted as a Christian.  See Compl., ¶ 7.  His family is in Iraq, which he cannot enter because "the Iraqi government no longer grants visas to Syrian citizens."  Id.  And his fiancée lies across oceans in the United States, where he cannot go until he gets a visa.  Dib has thus spent two years languishing in Jordan, alone.  Id.  That experience has left him with major depressive disorder with psychotic features, id., which his psychiatrist judges is exacerbated by his isolation in Amman.  See ECF No. 1-4 (Dib Mental Health Diagnosis).  The stress has also taken its toll on his body.  Plaintiff asserts that it has "contributed to . . . kidney problems and severe flare-ups of psoriasis, resulting in significant discomfort and pain."  Compl., ¶ 7.  Nor has it spared his fiancée, who has been diagnosed with "Generalized Anxiety Disorder and Adjustment Disorder with Depressed Mood."  Id.; see also ECF No. 1-5 (Yared Mental Health Diagnosis).

Health aside, these factors pull further in Plaintiff's direction because a prolonged separation from a fiancée is itself a deep injury.  Isse, 2023 WL 4174357, at *7; Didban, 435 F. Supp. 3d at 177.  Factors (3) and (5) therefore favor relief.

> c.      Factor (4)

On the other hand, the fourth factor — "the effect of expediting delayed action on" other agency priorities, TRAC, 750 F.2d at 80 — is a major obstacle to Plaintiff.  If a line of applicants

13

is waiting for a decision and "putting [Plaintiff] at the head of the queue simply moves all others back one space and produces no net gain," then that fact by itself usually precludes relief. In re Barr Lab'ys, Inc., 930 F.2d 72, 75 (D.C. Cir. 1991). That is true even when all the other factors line up in a plaintiff's favor. Id. at 75–76; Mashpee Wampanoag Tribal Council, 336 F.3d at 1100 (characterizing Barr Laboratories as so holding); see also Am. Hosp. Ass'n v. Burwell, 812 F.3d 183, 192 (D.C. Cir. 2016) (that fact alone "forecloses" relief); In re Pub. Emps. for Env't Resp., 957 F.3d 267, 275 (D.C. Cir. 2020) (explaining that Circuit "will not" grant relief in such case).

Not only would merely rearranging the queue fail to reduce the total wait time, it would also transfer decisions about which cases to prioritize away from the expert and accountable agency to the federal courts. See Barr Lab'ys, 930 F.2d at 76 ("The agency is in a unique — and authoritative — position to view its projects as a whole, estimate the prospects for each, and allocate its resources in the optimal way."). Plus, it would change the criteria used to prioritize applicants from the merits of their case to the speed with which they sued. Mohammad v. Blinken, 548 F. Supp. 3d 159, 167 (D.D.C. 2021).

The Court will not intrude on Defendants' prerogative to set their own priorities — especially when that would thwart Congress's choice to "give[] the agencies wide discretion in the area of immigration processing." Skalka, 246 F. Supp. 3d at 153–54. Nor will it pull Dib to the front of the line at the cost of other applicants who might similarly yearn to come to the United States and might be suffering similar hardships while they wait for documents that will let them. This factor favors Defendants.

14

        d.     Factor (6)

The last factor notes that courts can still find that agency action was unreasonably delayed even if no "impropriety lurk[s] behind" the delay. TRAC, 750 F.2d at 80 (quoting Pub. Citizen Health Rsch. Grp. v. Comm'r, FDA, 740 F.2d 21, 34 (D.C. Cir. 1984)). Without impropriety, however, this factor is neutral. Da Costa, 80 F.4th at 345–46. Plaintiff does not allege that Defendants have acted improperly, so this factor favors neither side. See Opp. at 37.

\* \* \*

Viewing the factors together, (1) and (2) weigh against relief, as does (4). That set of factors is by far the most important. While factors (3) and (5) tilt toward Plaintiff, they cannot overcome the fact that the length of delay is reasonable as a matter of law and that letting Dib cut in line would simply push others back. While the Court has the utmost sympathy for his plight, it must deny relief under the APA.

        C.     Mandamus

Finally, the Court turns to Dib's petition for a writ of mandamus. The D.C. Circuit has given two sets of instructions on how courts should analyze such petitions. First, the inquiry contains a jurisdictional prong and a merits prong. In re Medicare Reimbursement Litig., 414 F.3d 7, 10 (D.C. Cir. 2005). Starting with the former, the Mandamus Act grants district courts jurisdiction over "any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. To unlock jurisdiction under this statute, "plaintiffs must demonstrate (1) a clear and indisputable right to relief, (2) that the government agency or official is violating a clear duty to act, and (3) that no adequate alternative remedy exists." Am. Hosp. Ass'n, 812 F.3d at 189. If any of those requirements is not met, then the court lacks jurisdiction under the Mandamus Act and

15

must dismiss the case.  Id.  Even when a plaintiff checks off all three prerequisites, conversely, that establishes only that the court may hear his suit.  It then proceeds to the equities, where the plaintiff must show "compelling equitable grounds," Medicare Reimbursement Litig., 414 F.3d at 10 (cleaned up), that clearly entitle him to this extraordinary remedy.  Am. Hosp. Ass'n, 812 F.3d at 189.  Only then should the court issue the writ.

The D.C. Circuit's second set of instructions is that whether the plaintiff is entitled to a writ of mandamus for delayed agency action depends once again on the TRAC factors.  Id.; In re Bluewater Network, 234 F.3d 1305, 1315 (D.C. Cir. 2000); In re Core Commc'ns, Inc., 531 F.3d 849, 855 (D.C. Cir. 2008); In re People's Mojahedin Org. of Iran, 680 F.3d 832, 836–37 (D.C. Cir. 2012).  How the TRAC factors map onto the general mandamus test, however, is mysterious.  Which factors go to the court's jurisdiction?  Which to the equities?  The Circuit has not said.  Am. Hosp. Ass'n, 812 F.3d at 189.  The distinction matters in theory.  A dismissal for lack of jurisdiction is done under Rule 12(b)(1) and is reviewed *de novo*, while a dismissal on the equities occurs under Rule 12(b)(6) and is reviewed for abuse of discretion.  Id. at 190.

That difference might matter to a student organizing her outline, but not necessarily to a court deciding a case — at least not when the result is as clear as it is here.  The D.C. Circuit has often held that courts can assume statutory jurisdiction to instead reject a claim on the merits.  E.g., Abdellatif v. U.S. Dep't of Homeland Sec., 109 F.4th 562, 569 (D.C. Cir. 2024).  Indeed, when a question of statutory jurisdiction is hard but "relief will unquestionably be denied" on the merits, Young v. EPA, 106 F.4th 56, 61 n.5 (D.C. Cir. 2024) (emphasis omitted), the Circuit often prefers to dispose of the claim on the easy merits grounds and thereby "avoid a doubtful issue of statutory jurisdiction."  Kramer v. Gates, 481 F.3d 788, 791 (D.C. Cir. 2007) (emphasis omitted).  That is the case here.  For the reasons discussed above, Plaintiff flunks the TRAC factors and so

16

is not entitled to a writ of mandamus, whichever formal prong applies to that failure.   The Court will therefore presume subject-matter jurisdiction under the Mandamus Act and reject Plaintiff's petition on the equities.   Cf. Rashidian, 2024 WL 1076810, at *5 & n.5 (taking this approach).

## IV.   Conclusion

While the Court may review the delay that Dib challenges here, he does not state a claim that such delay is so unreasonable that it merits judicial intervention.   The Court will therefore grant Defendants' Motion to Dismiss.   An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date:  June 2, 2026

17